THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. IVORY TALIFERRO, JR., Defendant-Appellant.

Fourth District   No. 4—87—0543

Opinion filed February 25, 1988.

Daniel D. Yuhas and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

The defendant, Ivory Taliferro, appeals his convictions of four counts of the offense of unlawful delivery of a controlled substance. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(c).) He contends the circuit court erred in denying without an evidentiary hearing his motion to suppress evidence, which was premised on an alleged violation of the Posse Comitatus Act (Act) (18 U.S.C. §1385 (1982)), and the circuit court erred in assessing against him a "street value" fine (Ill. Rev.

Stat. 1985, ch. 38, par. 1005—9—1.1) of $100, when the evidence established undercover police officers paid only $90 for the illegal drugs which formed the basis for the charges against him.

Following Taliferro's indictment on April 30, 1987, he filed a motion to suppress evidence allegedly obtained as a result of the United States Air Force's involvement and participation in an investigation by the Champaign police department and the Illinois State Police into drug dealing on his part. The motion alleged the Air Force's involvement and participation in the investigation violated the Act, which provides:

> "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both." (18 U.S.C. §1385 (1982).)

Taliferro's motion to suppress evidence named Airman Christopher J. Ferguson as the individual who purportedly assisted in the investigation in violation of the Act. The motion further alleged officers of the Champaign police department and the Illinois State Police wilfully requested Ferguson's assistance and active participation in the investigation with full knowledge he was enlisted in the Air Force, and Ferguson's participation in the investigation required him "to perform traditional duties of law enforcement officers." The motion further alleged (1) Ferguson's assistance, help, and active participation in the investigation was carried out with full notice, knowledge, and approval of Air Force officers stationed at Chanute Air Force Base, (2) Ferguson participated in the investigation as a member of the Air Force and not as a private citizen, and (3) Ferguson's participation in the investigation was not justified by any military purpose and was not conducted pursuant to any military regulations. The motion concluded with an allegation Ferguson's violation of the Act "was flagrant and intolerably surpassed acceptable levels of military involvement into civilian law enforcement duties, and at all time [sic] herein mentioned was frequent and widespread."

At a hearing on Taliferro's motion to suppress evidence held July 10, 1987, the circuit court stated (1) it was improbable Congress intended undercover drug dealings by military personnel to fall within the proscription of the Act, (2) the allegations of Taliferro's motion to suppress did not establish a flagrant violation of the Act, and (3) assuming a violation of the Act did occur, evidence obtained as a result of the violation was not subject to an exclusionary rule. Therefore,

the court held there was no need for the presentation of evidence in order to resolve the issues raised by Taliferro's motion to suppress and denied the motion.

Taliferro's stipulated bench trial took place on July 13, 1987. It was agreed Joseph Bates, a trooper with the Illinois State Police, would testify he acted as an undercover narcotics agent in the Champaign County area during March and April 1987. On March 16, 1987, Bates, in the company of Christopher Ferguson, an airman at Chanute Air Force Base, went to 1305 North Hickory in Champaign. At that location, Ferguson introduced Bates to Taliferro and represented to Taliferro Bates was another airman from Chanute Air Force Base. Taliferro refused, however, to sell any narcotics to Bates. Bates then exited the residence, handed Ferguson $25 which had been provided him by the Champaign police department, and went outside to wait in a vehicle. Within a few minutes Ferguson, who no longer had the $25, exited the residence and handed Bates a substance purported to be a quarter gram of cocaine.

Bates returned to 1305 North Hickory on March 23 and April 14, 1987. On the first date, he purchased from Taliferro a quarter gram of a substance purported to be heroin for $20; on the second date, he purchased from Taliferro a substance purported to be a quarter gram of heroin for $20 and a substance purported to be a quarter gram of cocaine for $25.

The parties further stipulated Christopher Ferguson would testify he is an airman at Chanute Air Force Base, but worked as a confidential informant and helped the Champaign police department and the Illinois State Police in identification of sellers of controlled substances in the Champaign County area. After he was given $25 by the Champaign police department, he entered the residence at 1305 North Hickory in the company of Joseph Bates and had a conversation with Taliferro. After Bates left the residence to wait in a car, Ferguson gave the $25 to Taliferro, who gave him a packet containing a white powdery substance. Ferguson gave the white powdery substance, which was purportedly a quarter gram of cocaine, to Bates.

Finally, the parties stipulated as to the testimony of Michael Cravens, a forensic scientist at the Illinois State Police Crime Lab. His tests of the substances purchased by Bates and Ferguson at 1305 North Hickory established the substance purchased on March 16, 1987, was cocaine, the substance purchased on March 23, 1987, was heroin, and one of the substances purchased on April 14, 1987, was heroin and the other cocaine.

At the conclusion of the trial, the court found Taliferro guilty of

all four counts of delivery of a controlled substance.

Sentencing hearings were held on July 14 and July 31, 1987. At the conclusion of the July 31 hearing, the court sentenced Taliferro to three years' imprisonment on the first count, five years' imprisonment on the second count, six years' imprisonment on the third count and six years' imprisonment on the fourth count. All of the prison sentences are to be served concurrently. The court found the street value of the drugs which Taliferro illegally delivered was $100 and ordered him to pay a fine in that amount plus costs.

Taliferro contends the circuit court erred in denying his motion to suppress evidence without according him an opportunity to present evidence in support of the motion. Therefore, he argues we should reverse his convictions and remand this cause for an evidentiary hearing on his motion to suppress evidence.

Taliferro concedes evidence has rarely been suppressed on the basis of violations of the Act, but asserts prior decisions hold evidence may be excluded if obtained as a result of an egregious violation of the Act. Taliferro maintains the allegations of his motion to suppress evidence to the effect Ferguson participated in the undercover investigation while on active military duty and with full knowledge and approval of his Air Force superiors establish a violation of the Posse Comitatus Act and ineffectiveness of military enforcement of the Act. He contends the latter is among the circumstances which possibly merits punishment of violations of the Act through application of an exclusionary rule.

Taliferro finally requests that contrary to the decision of the First District of this court in *People v. Hayes* (1986), 144 Ill. App. 3d 696, 494 N.E.2d 1238, we hold that exclusion of evidence may be a remedy for violations of the Act, and the determination of whether evidence should be excluded should be done on a case-by-case basis. He asserts (1) the mere availability of such a remedy should deter violations of the Act, (2) actual exclusion of evidence is unlikely to be frequently necessary, and (3) a case-by-case determination of whether evidence should be excluded would be less burdensome on law enforcement agencies than a *per se* rule of exclusion.

The State contends the circuit court properly denied Taliferro's motion to suppress evidence. The State notes with few exceptions courts have uniformly held the exclusionary rule inapplicable to evidence seized as a result of violations of the Act. The State observes the First District of this court, in the only Illinois decision which has considered the question, implied exclusion of evidence is never an appropriate sanction for a violation of the Act, regardless of how egre-

gious the violation. *Hayes*, 144 Ill. App. 3d 696, 494 N.E.2d 1238.

The State further asserts, assuming *arguendo* an exclusionary rule should apply with regard to widespread and repeated violations of the Act, there are insufficient indications of widespread or repeated violations to support exclusion of evidence in the present case. Finally, the State observes relevant case law and commentary hold passive activities of military personnel, which only incidentally aid civilian law enforcement activities, do not fall within the proscription of the Act. Rather, the Act is aimed at deliberate use of armed military force for the purpose of executing civilian laws more effectively than is possible through civilian law enforcement channels.

With the exception of the addition of the Air Force to the armed forces governed by the Act, the language of the Act has remained substantially unchanged since its original enactment in 1878. (See 20 Stat. 152, ch. 263, §15 (1878).) Generally speaking, the impetus for passage of the Act was the extensive use of Federal troops in the South during the reconstruction period to enforce the laws and to support the new "carpetbag" State governments. A particularly important reason for passage of the Act was the meddling by Federal troops in the 1876 presidential elections in the southern States. Congressional debates preceding passage of the Act indicate its proponents did not intend it to apply to situations where soldiers "suppress a crime like any other citizen would suppress it." (7 Cong. Rec. 4247 (1878).) Instead, the intent was the Act apply only to situations where a member of the armed forces enforces or facilitates the enforcement of civilian laws by reason of his status as a member of the armed forces and the authority to utilize force of arms to compel others to act or refrain from acting stemming from that status. See 7 Cong. Rec. 4240-48 (1878); *People v. Burden* (1981), 411 Mich. 56, 303 N.W.2d 444; *Hayes*, 144 Ill. App. 3d 696, 494 N.E.2d 1238.

The sole case which Taliferro cites in which evidence was suppressed on the basis of a violation of the Act is *Taylor v. State* (Okla. App. 1982), 645 P.2d 522. That case is readily distinguishable from the case at bar. In *Taylor*, a military police officer, in addition to participating in an undercover drug purchase, pulled a gun during the arrest of the defendant and actively participated in the search of the defendant's house following his arrest.

In the present case, by contrast, Taliferro did not allege in his motion to suppress and there is no evidence Airman Ferguson used or threatened the use of armed force in order to enforce a civilian law. To the contrary, the stipulated evidence introduced at Taliferro's trial (which we may consider in determining whether Taliferro's motion to

suppress was properly denied (*People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808)) indicates Ferguson participated in a controlled drug purchase in exactly the same manner as any other citizen would participate in such a transaction.

■ A motion to suppress evidence must "*state facts* showing wherein the search and seizure were unlawful." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 114—12(b).) Taliferro's motion to suppress states no facts (such as those present in *Taylor*) which would establish a violation of the Act. Furthermore, at Taliferro's bench trial the parties stipulated to no facts which would establish a violation of the Act. Therefore, the record does not present a factual question as whether a violation of the Act occurred, and the circuit court properly denied Taliferro's motion to suppress evidence without holding an evidentiary hearing. Because there was no violation of the Act, we need not here decide whether exclusion of evidence is a proper remedy for violation of the Act.

■ The basis for Taliferro's second allegation of error is the imposition upon him of a "street value" fine of $100 when the only relevant evidence presented at trial demonstrated the street value of the drugs which Taliferro illegally delivered did not exceed $90. The State concedes the circuit court erred in imposing upon Taliferro a "street value" fine of $100 and requests we reduce Taliferro's "street value" fine to $90. We therefore reduce the "street value" fine imposed upon Taliferro to $90.

The circuit court's denial of Taliferro's motion to suppress evidence is affirmed; the judgment entered on Taliferro's convictions is modified in that the "street value" fine is reduced to $90.

Affirmed as modified.

LUND and KNECHT, JJ., concur.