THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT SLEDGE, Defendant-Appellant.

Second District    No. 79-536

Opinion filed February 2, 1981.

Mary Robinson and Kyle Wesendorf, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

After trial by jury, defendant Robert Sledge and his co-defendant Felipe Fresco were found guilty of armed robbery and home invasion. Defendant Sledge was thereafter sentenced to a 6½-year term in the penitentiary for armed robbery and we are concerned only with his appeal in this case. See *People v. Fresco* (1980), 87 Ill. App. 3d 431, 409 N.E.2d 123.

The parties do not substantially dispute the facts. It appears that on the evening of January 31, 1979, Lucille Thompson was having a party at her home at 1216 School Street in Rockford, attended by about 50 persons. She was playing cards in the kitchen with other guests at about 11 p.m. when her daughter ran in and announced a robbery was taking place. Two men entered, the first wearing a brown or dark stocking cap over his face and a red scarf; this man was carrying a sawed-off gun and was believed by Mrs. Thompson to be a black person. The second man

was taller and wore a white stocking cap, he carried a pistol and had a Spanish accent. Both men wore dark gloves. Mrs. Thompson estimated that about $200 was taken from persons in the house.

At about 11:30 p.m. Rockford police officer Lester Anderson responded to a call to that address, as did other officers, and after hearing a description of the robbers he left to patrol the area in his squad car. A few minutes later at a nearby intersection of Mulberry and Oakley Streets, Anderson saw a car parked with its lights out and two people sitting inside. As he drove towards it he observed a black male on the driver's side and a man of apparent Spanish descent sitting on the passenger side. Hearing the car start, Anderson pulled his squad car in front of it whereupon the passenger jumped out and ran. The driver, identified by Officer Anderson as defendant Sledge, was ordered out of the car, handcuffed and placed in the back seat of the squad car. He was wearing a dark stocking cap and a red scarf. At about this time, Officers John Vaughn and Anthony Picirilli arrived to assist and observed Sledge pushing money behind the cushion of the back seat of the squad car. Anderson and the other officers searched the car in which Sledge had been sitting and found several pairs of gloves and a white stocking cap. Anderson also recovered a sawed-off rifle from under the driver's seat.

The issues presented for review are (1) whether the trial court erred in denying defendant's motion to suppress physical evidence; (2) whether defendant was denied a fair trial; and (3) whether he was proved guilty beyond a reasonable doubt.

Defendant contends first that because Officer Lester Anderson did not testify at the hearing of defendant's pretrial motion to suppress physical evidence that defendant was denied a full and fair hearing and there were insufficient facts presented to justify the finding by the trial court that there was probable cause to arrest him. He concludes that the search was incident to an illegal arrest and the evidence recovered thus should have been suppressed.

It appears that for medical reasons Officer Anderson was unable to testify at the suppression hearing on April 26, 1979. Officers Vaughn and Picirilli testified that they had received a radio call while on patrol in their squad car referring to an armed robbery at 1216 School Street. The robbers were described as a Negro male, wearing a brown hat and red and white scarf, carrying a sawed-off shotgun, and a possibly Mexican male wearing a white ski mask and carrying a revolver. As they patrolled they observed Officer Anderson with defendant in custody putting him in the squad car. These officers, over defendant's objection, were permitted to also testify to facts related to them at that time by Officer Anderson as to what he had seen before their arrival. This hearsay testimony was limited by the trial court, however, to its consideration of whether

Vaughn and Picirilli had probable cause to detain defendant, and it was ruled as not admissible on the issue of whether Anderson made a proper stop of defendant prior to the arrival at the scene of the other officers. The limited testimony essentially disclosed that Officer Anderson had a description of the robbers, had observed the parked car containing a black man and a Mexican-appearing man and the arrest of Sledge as we have earlier described.

The trial court determined that the officers could properly search the squad car in any event and also properly searched defendant's person on the reasonable assumption the money found behind the seat came from him. It further found Vaughn and Picirilli had probable cause to detain defendant. The court made no finding at that time on the issue of whether Officer Anderson had probable cause to arrest defendant but denied his motion to suppress physical evidence.

The joint trial of defendants Sledge and Fresco commenced May 23, 1979, before Judge John E. Sype, who had also heard Sledge's motion to suppress evidence. Officer Lester Anderson testified at trial and was extensively cross-examined by both of the attorneys for the defendants. He related that he had been dispatched to 1216 School Street, arriving at approximately 11:30 p.m. on January 31. He there received a description of the robbers, then left the scene in the squad car. A few minutes later he saw a car parked facing him without lights, with two persons in it and drove towards it. The squad car lights illuminated the interior of the car, and the officer observed a Mexican and a Negro male in it; the Negro man fit the description of one of the robbers given to the officer at the scene of the robbery. As he drove closer, movement started in the car as though the men were going to jump out and he pulled the squad car over to it. The Mexican male jumped out and ran away and the other man, who was sitting in the driver's seat, reached under the seat for something. Officer Anderson testified he believed the man (whom he identified in court as defendant Sledge) was a suspect in the armed robbery and ordered him out of the car at gun point. Defendant was wearing a brown sweater cap and a red scarf as had one of the robbers at the School Street address. Defendant was searched for weapons and handcuffed, then placed in the squad car. Officer Anderson looked under the seat where defendant had been sitting and found a .22-caliber sawed-off rifle. Also recovered from the car was a white stocking cap in which eye holes had been cut and brown gloves.

None of the victims to the robbery were able to identify the masked robbers in trial. Mrs. Thompson did testify that the brown hat and red scarf worn by defendant when arrested were the same as those worn by one of the robbers, who was also black. She also identified the sawed-off rifle and the white stocking cap recovered from the car. Anthony Thompson,

who was present at the robbery, also identified in trial the rifle, white ski mask, brown hat and bandana as being the same as those used by the robbers.

Defendant testified and denied participating in the robbery. He stated he was walking home after getting his hair fixed when he saw the car in question with two men whom he did not know sitting in it. One of these men offered him $10 to drive the other man home; defendant agreed to do so, and that person then left. Defendant stated he got in the car and had just started to drive when the police car arrived. The other man then jumped out, ran, and defendant was arrested.

Defendant contends first that his motion to suppress evidence should have been granted as there were no facts adduced at the hearing of the motion to support a finding that Officer Anderson had probable cause to arrest him.

Both the State and defendant appear to agree in their briefs that a reviewing court is not limited solely to the evidence presented at the suppression hearing to find support for a finding of probable cause and that it may also consider evidence adduced at trial in determining whether a denial of a motion to suppress was error. (*People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808.) Defendant, however, cites *People v. Williams* (1978), 62 Ill. App. 3d 874, 379 N.E.2d 1222, for authority that evidence adduced at trial supporting admission of the evidence sought to be suppressed can be considered on review only if it was introduced in trial before the introduction of the questioned evidence itself. In the present case, the physical evidence recovered from the car and defendant was first produced in trial for purposes of identification by the testimony of police department property and identification officers who had custody of it. The exhibits were marked for identification and these officers testified as to their location and safe-keeping since defendant's arrest and until trial. Lucille and Anthony Thompson were next called to testify and identified certain of the exhibits as being used by the robbers as we have earlier described. Officer Anderson was the next witness called and was examined by the State and cross-examined by counsel for defendants regarding the events leading to defendant's arrest and search of the car. At the close of the State's case the disputed exhibits were offered and admitted in evidence over defendant's objection.

In *People v. Williams*, upon which defendant relies for exclusion of the trial testimony of Officer Anderson as supplemental support on appeal for the probable cause finding of the trial court, the disputed evidence was not introduced at trial or on the motion to suppress heard at the same time. There, in seeking to support the finding of the trial court that there was probable cause for defendant's arrest, the State referred on appeal to defendant's arrest sheet containing his fingerprints which first

came into the record at the sentencing hearing. The reviewing court, however, declined to consider evidence not presented at trial. (*People v. Williams* (1978), 62 Ill. App. 3d 874, 880, 379 N.E.2d 1222, 1227.) Other reviewing courts have referred to *People v. Braden* and suggested that testimony in support of the trial court's probable cause determination should be presented prior to the introduction of the challenged evidence. *People v. Meacham* (1977), 53 Ill. App. 3d 762, 766, 368 N.E.2d 400, 402; see also *People v. Griswold* (1977), 54 Ill. App. 3d 246, 250, 369 N.E.2d 392, 395.

The State argues that *Braden* does not require the strict rule urged by defendant and notes that the failure to hold a pretrial hearing on a motion to suppress is not reversible error where "upon the entire record the evidence shows that defendant was not deprived of the constitutional or legal rights assertedly denied." (*People v. Rose* (1979), 75 Ill. App. 3d 45, 50, 393 N.E.2d 698, 702.) The State also refers to *People v. Dennison* (1978), 61 Ill. App. 3d 473, 378 N.E.2d 220, where the reviewing court held it could consider the entire record despite the fact the same judge did not preside over the preliminary hearing and the motion hearing in both of which relevant evidence relating to probable cause was presented.

It is apparent in the circumstances of this case that Officer Anderson, who could not be present at the motion to suppress, was a necessary witness to supply a basis for the arrest and initial search. He was working alone and had placed defendant under arrest before the other officers reached the scene. *People v. Braden*, however, cannot fairly be read to support the absolute procedural rule urged by defendant. The question considered there, under the facts of the case before it, was "whether the additional testimony at the trial prior to the introduction of the evidence obtained by the search cures the error of the trial court in denying the preliminary motion to suppress." (34 Ill. 2d 516, 520, 216 N.E.2d 808, 810.) The supreme court noted that a trial court's ruling on such a motion is not final and may be changed or reversed at any time prior to final judgment. (See *People v. Kissane* (1932), 347 Ill. 385, 179 N.E. 850.) The court also referred to *Commonwealth v. Young* (1965), 349 Mass. 175, 178, 206 N.E.2d 694, 696, where it was held that any error which may have occurred in the denial of a defendant's motion to suppress was not prejudicial "for probable cause appeared before the confession was *admitted* in evidence." (Emphasis added.) The *Braden* court concluded that since the evidence at trial established the legality of the arrest and search defendant could not avail himself of any error on the motion to suppress.

In the present case the disputed evidence was offered and admitted in evidence at the close of the State's case. During the presentation of the State's case Officer Anderson testified, and defendant had a full oppor-

tunity to inquire into the basis for his arrest and did so. Presumably, if defendant believed then that the testimony of the officer failed to supply the necessary facts to support his arrest and search he would have called it to the attention of the court. He did not do so, however, nor did he seek to renew his motion to suppress during the trial.

We note too that Officer Anderson also testified at a preliminary hearing held in this matter before Associate Judge Michael Morrison on February 13, 1979, where defendant was represented by the same counsel who appeared on his behalf at the hearing of the motion to suppress and at trial. The witness testified there regarding the circumstances preceding his arrest of defendant and was cross-examined in detail by counsel for both defendants. See *People v. Dennison* (1978), 61 Ill. App. 3d 473, 378 N.E.2d 220.

■■ We conclude we may properly consider the trial record of this case in our review of the probable cause issue. It is apparent that a better practice would be to not bring evidence before the court or jury until all evidence necessary to its admissibility has been first produced. That could have been accomplished in this case by calling Officer Anderson to testify in trial before producing the disputed exhibits in court. Counsel for defendants, however, did not object on this ground nor call to the court's attention it had not considered the circumstances of defendant's initial arrest at the hearing of the motion to suppress. A different question would be presented if evidence, subsequently suppressed, was produced before a jury under these circumstances; that might well have such a prejudicial effect as to require reversal.

■■ Defendant also contends that even if we consider Officer Anderson's testimony, he lacked probable cause to arrest. We do not agree. Officer Anderson knew that an armed robbery had occurred nearby shortly before he first saw the two men seated in an unlighted car. The robbers had been described to the officer as a Negro male and a Mexican male, and as he approached the car he recognized that defendant, who was wearing a red scarf and a sweater cap, fit the description given to him of one of the robbers. The Mexican male fled from the car as the officer approached, and defendant Sledge reached under his seat. Officer Anderson testified that he then believed defendant was a suspect in the armed robbery and ordered him out of the car at gun point. After handcuffing and searching defendant for weapons, he placed him in the squad car and then looked under the seat and recovered a sawed-off rifle. Other officers arrived at the scene and observed defendant pushing money behind the car seat. They also searched the car in which the two men had been seated and recovered a white stocking cap with cut out eye holes and several pairs of gloves.

■■■ The test of a valid search is whether it was reasonable and it will be

deemed so if undertaken incident to a lawful arrest (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356); a police officer may make an arrest without a warrant if he has reasonable or probable cause to believe a person has committed a crime (*People v. Brooks* (1973), 13 Ill. App. 3d 1003, 301 N.E.2d 496). In determining whether probable cause exists a court must consider the totality of the facts and circumstances known to the officer when the arrest was made. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) In doing so it is proper to recognize that "[p]olice officers often must act upon quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals." (*People v. Watkins* (1960), 19 Ill. 2d 11, 19, 166 N.E.2d 433, 437, *cert. denied* (1960), 364 U.S. 833, 5 L. Ed. 2d 59, 81 S. Ct. 57.) The facts upon which probable cause to arrest is based need not be sufficient to convict, but something more than a hunch or mere suspicion is required. *People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 402 N.E.2d 915.

■■ We conclude that Officer Anderson had probable cause to arrest defendant under these circumstances. He could reasonably believe that defendant and his fleeing companion were the men who had committed the recent armed robbery described to the officer. (See *People v. Gunderson* (1978), 66 Ill. App. 3d 516, 383 N.E.2d 1296.) As defendant was lawfully arrested, his motion to suppress the evidence seized incident to it was properly denied.

■■■ Defendant contends next that prejudicial trial error depriving him of a fair trial occurred when a police officer testified he knew defendant Sledge and that defendant was not a peace officer, and because a witness called by the State came into the courtroom wearing jail clothing. Defendant argues there was an inference of a prior arrest when Officer Esteban Martinez identified him and stated he was not a peace officer. The testimony was necessary, however, to prove an essential element of home invasion (Ill. Rev. Stat. 1977, ch. 38, par. 12—11) for which defendant was being tried, and the trial court specifically admonished the jury it could consider the evidence only as it related to that issue. Defendant's right to a fair trial was not impaired by this testimony nor do we find he was prejudiced by the fact co-defendant Fresco's cousin wore jail clothing when called to testify. See *People v. Dismuke* (1972), 3 Ill. App. 3d 553, 278 N.E.2d 152; *People v. Shorter* (1978), 59 Ill. App. 3d 468, 375 N.E.2d 513.

■■ Defendant's final contention is that his guilt was not established beyond a reasonable doubt. We do not agree. While defendant was not directly identified by the victims of the robbery and home invasion as one of the robbers the circumstances pointing to his guilt were convincing. One of the robbers was described as a black man with a dark stocking cap

over his face who was wearing a red scarf and carrying a sawed-off gun. The second robber was described as having a Spanish accent and wearing a white stocking cap. Both men wore dark gloves. A few minutes after the robbery, and a short distance from the scene, defendant was found with a Mexican man wearing articles as described by the victims and with a sawed-off rifle under his seat. The second man ran away and defendant attempted to secrete money in the squad car. A white stocking cap with cut eye holes was found in the car together with several pairs of gloves. Defendant's explanation for his presence in the car with the items identified by the victims was apparently not accepted by the jury.

We may not reverse a determination of guilt by a jury unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671) and find the evidence to be sufficient to sustain its verdict in this case.

For these reasons the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

VAN DEUSEN and UNVERZAGT, JJ., concur.